When we have a visiting judge, often we only have that visitor for two days. We're really lucky this week, though, because we have our friend Judge Rubino from Pennsylvania who's sitting with us again. He's sat with us several times in the past, and it's great to have him back and to be here not just for a couple of days, but for the full week. I've said earlier this week, we really depend on the help that we get from the senior judges. They shoulder 20%, at least 20% of the workload of the federal judiciary. They don't have to do that. They can just spend time with grandchildren. In fact, Judge Rubino got another visit, and we very much appreciate the sacrifice he's made to be here with us this week. So thanks for being with us. We have three cases to hear this morning. We're familiar with your cases. We've read your briefs. The authorities cited in your briefs and at least portions of the records. So in the limited time available to you, please feel free to get straight to the heart of your argument. Don't treat the red light as aspirational when it shines. It's time to wrap it up, but if you're answering a question from the court, feel free to finish your answer. If you're going to have some rebuttal time, you won't lose whatever you've reserved if you're just answering a question from the court. So we'll start this morning with United States v. Kirby. Mr. Smith. Good morning. May it please the court. Fundamentally, this is an issue of the proper construction of sentencing guidelines section 5G 1.2D. That section reads, quote, if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively. Specifically, it then goes on to provide, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law. Yeah, the guidelines provided for a life recommendation, right? That's correct, Your Honor. So what's longer than life? Well, Your Honor, I would submit that 1,440 months is longer than life. Well, it might be as a matter of what we know about human life expectancy, but a life term is of indefinite duration, right? Your Honor, a life term is of indefinite duration, but life under the guidelines from our perspective requires a numerical value, because if you do not assign it a numerical value . . . Can't. I mean, and you've relied upon the sentencing commission's source book, right? Yes, Your Honor. But the source book's not part of the guidelines, right? No, the source book is required by statute so that the guidelines commission can report to Congress about how the guidelines work, how they're being applied. It's just a statistical report, though? It is a . . . well, not to quibble, I think it's more than a statistical report. I think it's a report with commentary and recommendations, but yes, essentially it's statistical. Well, there are reports that have commentary and recommendations. The source book is just a statistical report. Yes, Your Honor. But it could be produced and published by the commission even when the commission doesn't have a quorum. Right now, for example, the United States Sentencing Commission only has two members. Are you aware of that? Yes, Your Honor. They can't do any business. They can't amend the guidelines, but the staff still produced the report. The staff produced the report, but I'm not . . . I thought the commission had to approve it before it could be published, but I think I'm digging too far into the weeds on that. Well, it's pretty important that we figure out what the report is because it seems to me it's just a statistical report. It's not the sort of thing that the commission approves by affirmative vote in a public meeting and then sends to Congress for Congress to have the opportunity to disapprove it and then become law. That's not . . . the statistical report is nothing like that, like an amendment to the guidelines itself. I agree with the court, Your Honor. It does not have the force of law and it is not the equivalent of a guidelines amendment. I offered the 470-month benchmark used in that statistical analysis because the government's argument and the understanding of the trial court plainly misconstrued 5G1.2D, which is a guideline section. In this case, the sentence that could be imposed on the count carrying the highest penalty was 30 years, but the guidelines score was life. In order for 5G1.2D to make sense, the part that says, but only to the extent necessary to produce a combined sentence equal to the total punishment . . . But you can't produce a sentence equal to life. Well, Your Honor, the problem is the guidelines section requires the court to do that. To do the closest thing you can. And the way to do that is to produce consecutive sentences at the statutory max. Up to the total punishment. Equal to, that's what the language is, but there's no way to produce a sentence equal to one of indefinite duration. And that is my argument, Your Honor. That is a structural defect in the guidelines that . . . It's not a defect in the guidelines, it's just, it seemed to me that what the district court did was exactly what the guidelines contemplated. From my perspective, Your Honor, the district court and the government is arguing that essentially are the same thing. But combined sentence and total . . . They have the same definition, but combined sentence and total punishment clearly under the guidelines are not intended to have the same definition. They're intended to be two separate things. And I believe that's the error that was committed in the sentencing and the error in interpreting 5G1.2D.  If the life expectancy of federal prisoners changed, and for that reason the Commission staff wanted to update the source book, and they came up with a different equivalent for a life sentence, different from 470 months, let's say it became 370 months. District courts would be obliged to use that, based on your argument? Your Honor, I am offering the 470 month benchmark, not because I think that's a mandatory benchmark that must be used by the district courts. I am offering it as an alternative to the district court's sentencing scheme, which I think is contrary to the plain language of the sentencing guidelines section. Yeah, you've used something from the report, not from the guidelines itself, and if you didn't use that, what would the district court use? Well, Your Honor, that's the structural defect in the guidelines. They require you to make calculations from or to a life sentence without telling you what a life sentence is. I chose the statistical report because it was generated by the Sentencing Guidelines Commission. The structural defect in the system is you're supposed to make calculations based on a life sentence, a guidelines life sentence, but the guidelines do not tell you what a life sentence is. Is the problem what the judge did, or is the problem that he did what the guidelines told him to do, but that was wrong? What are you attacking? Which are the two? It's a combination of both, Your Honor, because I don't believe the judge followed 5G1.2D because that required him to stack sentences only up to the equivalent of the guidelines range, which is life, which is somewhat amorphous, but the guidelines have a flaw which led him to make that miscalculation. In other words, the court and the government argument both assume that since we don't know what life is, life is whatever the total sentence, or I'm sorry, the combined sentences. That seems to me is an attack on the guidelines, not on what the judge did, so we would have to throw out the guideline. Well, you could say that the life guideline, this section cannot be administered as written because there's no value to a life guideline. I chose to argue, let's look elsewhere in the Sentencing Commission's work to see if we can assign a rational value to a life sentence for guidelines purposes. That's what led me to the statistical report and the opinions in Nelson and Kincaid from the other circuits. Mr. Smith, I think we understand your argument on that, and if Judge Rubino is finished, would you turn to your argument about the reasonableness of the sentence? Let me ask you first, do you agree that plain error review applies? Yes, I do, Your Honor. I think in this case, plain error is present in three respects, in the procedural . . . I wonder why you think that, why you think it's plain error. This is an argument about whether the sentence is substantively unreasonable. I was still procedurally unreasonable, but I can go to substantively. Do you have a procedural unreasonableness argument that's different from the one we've already been talking about? Well, only as it addresses the issue of whether we've demonstrated plain error. The plain error, I think, is found in three places. One is the plain language of the guidelines, which we have already addressed. Okay. All right, then I get it. Just to be clear, your procedural unreasonableness argument is based on the same argument that you've made about the sentencing guidelines? That in part, but also United States v. Nelson, which we cited to the court, found at 491 Fed Third 344, cert was denied on that case by the U.S. Supreme Court. While I agree with the government that that is not a direct ruling on the issue that serves as notice for the purpose of plain error, it's more than an indication that the Supreme Court agrees with the finding in Nelson, which is that 470 months was a cap. Finally, your honor, 18 U.S. . . . That was just being used as a baseline to calculate a reduction in a sentence for substantial assistance. Well, it was used as the benchmark so that the court could make necessary guidelines adjustments. That is correct, your honor, and again, that's my point. Without having a benchmark, how do you make those guidelines . . . Yeah, but it wasn't the question that's presented here. No, it's not exactly the question that was presented here. As far as the substantive error, your honor, the substantive reasonableness, to get back to Judge Pryor's question, I think the substantive reasonableness depends on the ruling on procedural reasonableness because if, in fact, life is 470 months or some other discrete number, then the court departed upward without providing reasons as required, and this court has repeatedly said departing upward without reasons is plain error. Okay, thank you, Mr. Smith. We're going to hear from Ms. Sweeney.  Good morning. May it please the court, I'm Sarah Sweeney. I'm here on behalf of the United States. Beginning with procedural reasonableness, what the court did here was exactly what was counseled by the guidelines, and it was procedurally reasonable because 5G 1.2 does not limit a all of these arguments, that this issue is judged under plain error, and as there's no precedent of this court or the Supreme Court that would support Kirby's argument, the procedural reasonableness argument is due to be denied. As to the substantive reasonableness argument that Mr. Kirby raises, the district court's well-reasoned within-guideline sentence of 120 years was effectively a life sentence, which is how this court should judge it under substantive reasonableness, and here the court engaged in a detailed explanation of the 3553A factors that he relied on. He found that Kirby was a predator that was hiding behind his position as a police sergeant, and that he needed to serve 120 years, again, effectively a life sentence in prison to produce deterrence and to protect the community. For all these reasons, the sentence was not an abuse of discretion, and this court should uphold it as substantively reasonable. If your honors have any questions, I'm happy to answer them, otherwise the United States will rest on its brief. I have one question, which really has to do with the legality of the sentence. That is, Congress has not authorized a life sentence for any of these crimes. Is there any issue that combining all of the sentences then produces a sentence which is not authorized by Congress? I don't believe so, your honor. I think that that would, obviously this wasn't addressed in any of the cases. I agree with that. I think that issue would be analyzed under the Eighth Amendment, you know, if it was a cruel and unusual punishment, which obviously it isn't here because on each count, the defendant was given no more than the statutory maximum that was available for that count. And then those counts were run consecutive to each other. So I don't think there's any sort of cruel and unusual punishment problem with that, nor do I think there's an issue in terms of saying that Congress didn't intend that someone serve a life sentence, because maybe Congress didn't intend that someone serve a life sentence on one count of production of child pornography, but where there are multiple counts of production of child pornography, particularly as here, involving different victims in different circumstances, I don't think that we can say that Congress didn't intend that someone might serve a life sentence in those circumstances. Thank you very much, your honors. Thank you, Ms. Sweeney. Mr. Smith? Thank you. Judge Rubino, to address that question as well. We did not raise that in our brief, primarily because it's well settled in the 11th Circuit that what the court did here was appropriate and permissible and didn't raise a constitutional question. I agree with the premise of the question, which is how can someone receive a life sentence when Congress has chosen not to make the maximum for that offense life? But I understand the arguments both ways. I could not, in good faith, raise that issue in my brief, given the settled nature of the law on that question. With regard to substantive reasonableness, I don't know that the 3553 reasons were as definite or as extensive as the government, as Ms. Sweeney has suggested in the district court's sentencing opinion. I'll defer to our briefs to the recitation of the proceedings or the facts of the sentencing proceeding in that regard. But I would point out, and this is, I think, regrettable. I'm sorry, your honors. I think it's regrettable, but I think, frankly, the fact is that this case really did not depart from the heartland of these particular types of cases. That's a terrible thing to have to say, but this court has dealt with these cases numerous times. I have tried these cases. To the extent that there is a typical pattern of behavior, there's nothing that is particularly egregious relative to this type of offense exhibited in this record. It's just not there. That's a very difficult argument to make. I recognize it. It's painful to make because it's a horrible crime. The fact is that the sentencing statistics that I cited to the court found from the Guidelines Report entitled Life Sentences in the Federal System demonstrate that sentences of the length imposed by the district court in this particular case are almost never imposed in cases where, as here, the defendant had no prior record, there was no use of violence, there was no injury to the victim. It was . . . I'm sorry, I lost my train of thought. The point is, in almost all of the cases in which this length of sentence was imposed, it was a case where there was a horrible prior record on the part of the offender or one of those other factors was present, not for a first offender of this nature. To the extent that the sentence was substantively unreasonable, I think that enters into the analysis as well. Thank you, Mr. Smith. Be happy. Thank you, Your Honor. Thank you.